**23PH-CV00974**

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

## IN THE CIRCUIT COURT OF PHELPS COUNTY
## STATE OF MISSOURI

| | |
|---|---|
| JAMES EYBERG, Individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    vs.<br><br>  VI-JON, LLC,<br><br>      Defendant. | Case No. |

## PETITION AND JURY DEMAND – CLASS ACTION

Plaintiff James Eyberg ("Plaintiff") on behalf of himself and others similarly situated, by and through his undersigned counsel, hereby files this Class Action Complaint against Defendant Vi-Jon, LLC ("Defendant"), and alleges the following facts and claims upon personal knowledge, investigation of counsel and information and belief.

## INTRODUCTION

1.      Consumers rely on hand sanitizers to "kill germs" on their hands in order to protect themselves from infection.  It is essential that manufacturers of hand sanitizers make truthful label statements on their products so that consumers know the limitations of those products in killing germs on hands and can make informed purchasing decisions.

2.      Here, not only did Defendant Vi-Jon, LLC ("Defendant" or "Vi-Jon") materially misstate on the labels of its hand sanitizing products the ability of the products to kill germs found on hands, but it also failed to do any real-world testing on the germs commonly found on hands in a real world setting to substantiate its label representations.

### A.  The Label Misrepresentations

3.      This putative class action seeks to hold Defendant responsible for misstatements on the labels of its hand sanitizing products (defined below as the "Products").

1

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

4.      On the front-facing, principal display panel, Defendant prominently states that the Products "kill[] 99.99% of germs" or "kill[] more than 99.99% of germs" (the "Representation" or "Front Panel Representation").

5.      As detailed below, the Front Panel Representation is false and misleading.

6.      The Front Panel Representation is followed by an asterisk, which leads to an asterisk on the back label.

7.      The back panel of the Products contains the statement: "Effective at eliminating more than 99.99% of many common harmful germs and bacteria in as little as 15 seconds" or "Effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds." (The "Back Panel Statement" or, collectively with the "Front Panel Representation", the "Representations").[1]

8.      The Back Panel Statement is in small and difficult to read print.

9.      The Back Panel Statement is false and misleading.

10.     The Back Panel Statement does not clarify or cure the falsity of the prominent Front Panel Representation.

11.     Consumer surveys involving Defendant's Products have found that the Front Panel Statement on these Products is the most important label Representation to consumers.

12.     Reasonable consumers of Defendant's Products rely on Defendant's prominent Front Panel Representation for its truth and understand the Representation to mean that the Products kill all or almost all of the germs on their hands.[2]

13.     The Products do not, however, kill all or almost all germs on hands.

---

[1] The label Representations on the Products are substantially the same, irrespective of the "more than" language included on certain of the Products.  In addition, if the 99.99% language is false and/or misleading, the more than 99.99% language is also necessarily false and/or misleading.

[2] Specifically, because Plaintiff and reasonable consumers rely on Defendant's Representation to mean that it kills all or nearly all germs on hands, they understand it to mean that it completely kills 99.99% of the germs on their hands. Furthermore, reasonable consumers believe that the term "germs" generally means things that can make them sick, without reference to specific pathogenic organisms.

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

14.     According to expert scientific analysis, there are approximately 1227 organisms that are pathogenic to humans that can be transmitted by hands.

15.     Furthermore, according to expert scientific analysis, under optimal laboratory conditions, the Products kill only approximately 47% of the 1227 organisms that are pathogenic to humans and can be transmitted by hands.

16.     In addition, under actual consumer use conditions, instead of in a sterile laboratory environment, the Products are additionally ineffective, including where the hands of consumers are dirty, greasy, sweaty or wet.

17.     Moreover, according to expert scientific analysis of several sources, the Products fail to kill approximately 40% of the germs that are most commonly found on hands, which cause illnesses in the United States population.

18.     For example, rhinovirus—the virus responsible for approximately one or two infections in each person in the United States each year—is commonly found on hands and is not killed by the Products.

19.     In addition, norovirus—the virus responsible for approximately 21 million cases of vomiting and diarrhea illness in the United States each year— is commonly found on hands and is not killed by the Products.

**B.  Defendant's Testing Cannot Substantiate Its Label Claim That the Products Kill 99.99% of Germs**

20.     Defendant only tests its Products for efficacy against approximately 2% of the approximately 1227 organisms that are pathogenic to humans and can be transmitted by hands.

21.     Specifically, to substantiate its label Representations, Defendant chooses to test its Products against only a total of 25 organisms, comprised of 23 bacteria and two yeast strains.

22.     Defendant does not test its Products against a single virus in order to substantiate its label Representations.

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

23.     Furthermore, Defendant does not test its Products on human hands in order to substantiate its label Representations. Instead, Defendant's efficacy testing is conducted in a test tube.

24.     The 25 organisms against which Defendant tests its Products are not commonly found on hands in an everyday consumer setting.

25.     Accordingly, and as described herein, Defendant's Representations are false on their face and misleading to reasonable consumers.

## STATEMENT OF FACTS

### A. Defendant Manufactures, Markets and Labels the Products

26.     Defendant Vi-Jon, LLC manufactures, advertises and labels numerous hand sanitizing products sold under store brand names and its own brand, Germ-X.[3]

27.     Attached hereto as Exhibit 1 are images of the front and back panels of the Germ-X hand sanitizer Products.

28.     On the front label of the Products, Defendant makes the prominent Representation that the Products kill 99.99% of germs.

29.     The prominent Front Panel Representation is an advertising statement.

30.     Consumer surveys involving Defendant's Products have found that the Front Panel Statement on those Products is the most important label Representation to consumers.

31.     The Representation on the front panel of the germ-x Product is included in all red font.

32.     The decisions made by Defendant regarding the prominent appearance of the Front Panel Representation were intentional.

---

[3] This action includes in the definition of Products all sizes, scents and variations of hand sanitizers that are manufactured by Defendant, contain ethyl alcohol as the active ingredient, and bear the "kills 99.99% of germs", "kills more than 99.99% of germs" and "kills 99.99% of harmful germs" representation on the principal display panel.

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

33.    Defendant makes the prominent Front Panel Representation to increase sales of its Products.

34.    The Front Panel Representation is followed by an asterisk.

35.    On the back panel of the Products, following an asterisk, Defendant states: "Effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds."

36.    The language appears as follows on the Germ-X Products: Defendant makes the Back Panel Statement below the Drug Facts panel. The Back Panel Statement appears in very small font that is smaller than the font used for the Drug Facts panel.

37.    The decisions made by Defendant regarding the label appearance of the Back Panel Statement were intentional.

38.    The decisions made by Defendant regarding the label appearance of the Back Panel Statement make the Back Panel Statement harder for a consumer to review, especially during the purchase process.

**B.  Defendant's Label Representations Are False and Misleading**

39.    Defendant's Front Panel Representation and Back Panel Statement are each false and misleading.

40.    Defendant's Front Panel Representation that the Products kill 99.99% of germs is false and misleading.

41.    "Germs" is defined by Merriam-Webster as, among other things, "*especially*: a microorganism causing disease".

42.    The Products do not kill 99.99% of germs on hands.

43.    In addition, as described below, the Products do not kill 99.99% of germs commonly found on hands.

44.    According to expert scientific analysis, there are approximately 1227 organisms that can cause disease in humans and are capable of transmission by hands.

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

45.     According to expert scientific analysis, under optimal, laboratory conditions, the Products kill only approximately 47% of the 1227 organisms that can be transmitted by hands and are pathogenic to humans.

46.     Moreover, a significant number of microbes that would otherwise be killed by the Products in a laboratory setting are not killed by the Products under real-world consumer use conditions.

47.     Hand sanitizers work by essentially breaking down the outer barrier of certain microbes in order to kill germs. The presence of dirt, moisture or grime on hands, however, acts as a protective barrier and prevents the active ingredient in hand sanitizers from being able to reach the outer wall of microbes in order to kill them. Accordingly, where hands are dirty, wet or greasy, hand sanitizers may be substantially or completely ineffective at killing germs on hands.

48.     Defendant's Back Panel Statement is also and is independently false and misleading.

49.     As described below, the Products do not kill 99.99% of (or more than 99.99% of) common harmful germs and bacteria in as little as 15 seconds.

**C.  Unclean Hands Is the Most Frequent Mode of Disease Transmission**

50.     The single most common mode of transmission of infection in humans is from unclean hands.

51.     "About 80% of infectious diseases are transmitted by unclean hands touching contaminated surfaces."  *See* NVSC Reminds of the Importance to Wash Hands Often and Properly, attached as Exhibit 2.

52.     Organisms that cause disease in humans can be transmitted by hands in a number of ways, including by (i) direct contact (touching another person's hand); (ii) contact with aerosols (for example, touching something or someone where viral particles from a sneeze or cough are present); (iii) fecal-oral transmission (touching something that has been contaminated with fecal-matter, for example from someone who has not adequately cleaned their hands after changing a

diaper, using the restroom, or changing a litterbox); and (iv) through contaminated soil or water.

53.    For example, an infected person can spread a virus to their hands by coughing or sneezing, where droplets containing the virus can then land on their hands.

54.    In addition, an infected person can spread a micro-organism to their hands by inadequately cleaning them after using the restroom, changing a diaper, or otherwise touching something with fecal waste or bacterial or parasitic spores on it.

55.    An infected person can then spread the organism to everything that they touch, including other people and inanimate surfaces.

56.    A person infected with norovirus, for example, can sequentially transfer the virus to up to seven clean surfaces.

57.    Other people who touch the surface containing the pathogenic organism "pick up" the organism on their own hands and can become infected.

**D. The Products Fail to Kill 99.99% of Germs Commonly Found on Hands, Which Cause at Least Tens of Millions of Cases of Infection in the United States Each Year**

58.    The active ingredient in the Products, ethyl alcohol, cannot disrupt the structure of numerous types of viruses and certain pathogens and therefore cannot "kill" them.

59.    The Products are ineffective against, for example, commonly occurring non-enveloped viruses, protozoan pathogens, and certain bacterial spores.

60.    The microbes described below, which are not killed by the Products, are commonly found on hands and cause at least tens of millions of cases of infection in the United States each year.

61.    These microbes are included as examples of germs commonly found on hands that are not killed by the Products. They are not, however, an exhaustive list.  There are numerous additional microbes that are not killed by the Products, which are not described herein.

*1.    The products do not kill non-enveloped viruses commonly found on hands.*

62.    According to a recent memorandum from the alcohol-based hand rub (ABHR) Task

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

Force, ABHR containing 70% ethanol (the maximum amount contained in the Products) at 15 seconds of exposure fails to kill non-enveloped viruses commonly found on and transmitted by hands. *See* Review, Ethanol is indispensable for virucidal hand antisepsis: memorandum from the alcohol-based hand rub (ABHR) Task Force, WHO Collaborating Centre on Patient Safety, and the Commission for Hospital Hygiene and Infection Prevention (KRINKO), Robert Koch Institute, Berlin, Germany, attached hereto as Exhibit 3.[4]

63.    Table 2 of Exhibit 3, included below, shows that the listed non-enveloped virus strains are not killed by the Products:

**Table 2** Efficacy of solutions based on ethanol and 2-propanol from quantitative suspension tests against non-enveloped viruses (sufficient efficacy is defined for $\geq 4$ log$_{10}$ reduction or up to test detection limit)

| Species | Strain, type | Alcohol content/necessary exposure time | | References |
|---|---|---|---|---|
| | | Ethanol | 2-propanol | |
| Adenovirus | Type 3 | 77–83%[c]/1 min | 90%[b]/5 min[d,e] | [16, 25] |
| | Type 5 | 80%[b]/30 s | | [17] |
| | Type 7 | 77–83%[c]/1 min | | [25] |
| | Type 8 | | 70%[c]/2 min[e] | [26] |
| Coxsackievirus | A16 | 90%[c]/5 min[d] | 90%/60 min[d,e] | [16] |
| | B1 | 60%[b]/10 min[d] | 95%[c]/10 min[d,e] | [27] |
| | B2 | 85%[c]/30 s [g] | 90%[c]/1 h[e] | [28] |
| | B3 | 90%[c]/15 sec[f] | 90%[c]/1 h[e] | |
| | B4 | 60%[c]/100 s | 90%[c]/1 h[e] | |
| | B5 | 77–83%[b]/1 min, 90%[b]/10 s, 80%[b]/30 s | 90%/60 min[d,e] | [16, 25] |
| Echovirus | Type 6 | 50%[c]/10 min[d] | 90%[c]/10 min[d] | [27] |
| | Type 7 | 80%[c]/1 min, 90%[b]/30 s | 90%/60 min[d,e] | [16] |
| | Type 11 | 95%[b]/20 s–1 min, 80%[b]/90%[b]/15 min[d] | 90%[b]/15 min[d,e] | [29–31] |
| | Type 12 | 70%[b]/80%[b], 90%[b]/15 min[d] | 90%[b]/ 15 min[d,e] | [30] |
| Feline Calicivirus | Strain F9 (ATCC VR-782) | | 50%[b]/ 70%[b], 90%[b]/5 min[d,e] | [32] |
| Human enterovirus | Type 70 | 70%, 80%, 90%[c]/10 s | 70%, 80%, 90%[b]/60 min[d] | [16] |
| | Type 71 | 80%[b]/1 min, 90%[b]/30 s | 90%[b]/60 min[d,e] | [16, 21] |
| Hepatitis A virus (HAV) | HM175/24a | 80–95%[b]/2 min | | [33] |
| Murine Norovirus | Strain S99 Berlin | 80%/30 s 72.4%[b] (6 mL)/30 s, 86%[b] (3 mL)/30 s, 89.5[b] (3 mL)/15 resp. 30 s | | [17, 20] |
| | Type 1 | 70–90%[b]/ 30 s | 70%[b]/5min[d] | [1] |
| Poliovirus | Type 1 | 73.5%[a]/10 min[d], 80%[c]/30 s, 80%[b]/1 min, 90%[c]/10 s, 90%[b]/1 min, 95%[b]/30 s | 70%[b] / 10 min[d,e] 80%[b] and 95%[b] / 10 min[d,e] 60–90%[b]/15 min[d,e], 90%/60 min[d,e] | [16, 20, 21, 27, 30, 34–36] |
| Polyomavirus | SV 40 | 78.2%[b]/10 min[d,e] | | [37] |
| | HPV16 pseudo-virus | 60%, 70%[c]/5 min[d] | | [38] |
| Rhinovirus | Type 2 | 80%[c]/3–60 min[d,e] | 60%, 70%[c]/5 min[d,e] | [39] |
| Rotavirus | Wa | 85%[e]/30 s | | [40] |

[a] w/w
[b] v/v
[c] Unclear whether w/w or v/v
[d] The exposure time is not feasible in practice
[e] Non-active concentration contact time ratio
[f] 3log$_{10}$ reduction

capable of causing disease in humans (feline calicivirus does not cause disease in humans), are

---

[4] Exhibit 3 was created in support of ABHR and "emphatically recommend[s] maintaining ethanol as a biocidally active ingredient in hand runs for use in healthcare settings." *Id.* at 9. Although Exhibit 3 strongly favors ABHS, it also recognizes the substantial limitations of ABHR in killing non-enveloped viruses.

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

commonly found on hands.

65.    Furthermore, Table 3 of Exhibit 3 lists 13 "[e]xamples of non-enveloped virus transmission via hands" leading to healthcare-associated infections. *Id.* at 5.

66.    12 of the 13 non-enveloped viruses listed on Table 3 can be transmitted by hands and more than half of them are listed as being transmitted regularly or predominantly via hands. *Id.*

67.    Referencing Table 3, the authors state: "If there is an infection due to one of these viruses, only hand antiseptics based on ethanol 95% or with reduced ethanol content and synergistic additives can be used to interrupt potential transmission." *Id.*

68.    Accordingly, the Products do not kill the viruses listed on Table 3, which include adenoviruses, coxsackieviruses, enterovirus A-71, rhinovirus, norovirus and rotavirus (discussed below).

69.    The following summarizes certain of the non-enveloped viruses discussed in Exhibit 3, which are commonly found on hands, are not killed by the Products, and account for at least tens of millions of cases of infection in the United States:

70.    ***Adenovirus is commonly found on hands***.

71.    "Adenoviruses are usually spread from an infected person to others through close personal contact, such as touching or shaking hands [;] the air by coughing and sneezing [;] touching an object or surface with adenoviruses on it, then touching your mouth, nose, or eyes before washing your hands . . . ."[5]

72.    Frequent hand washing with soap and water reduces the risk of acquiring the virus. Hand sanitizer does not kill adenovirus.[6]

73.    According to Table 2 of Exhibit 3, adenoviruses are killed by between 77%-83% ethanol at a minimum exposure time of 30 seconds.

---

[5] https://www.cdc.gov/adenovirus/transmission.html (last accessed April 8, 2023).

[6] https://www.nationwidechildrens.org/family-resources-education/700childrens/2018/01/what-parents-need-to-know-about-adenovirus (last accessed April 8, 2023).

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

74.     Adenoviruses are not killed by the Products.

75.     Adenoviruses cause about 10 percent of all childhood fevers and nearly all children have had at least one adenovirus infection by the age of 10.[7]

76.     ***Coxsackievirus is commonly found on hands***.

77.     The most common type of coxsackievirus in the United States is hand foot and mouth disease ("HFMD", Coxsackievirus A16).[8]

78.     "Hand, foot, and mouth disease spreads through close personal contact, such as kissing or hugging, coughing and sneezing, contact with feces (poop), and touching objects or surfaces that have the virus on them then putting your fingers in your eyes, nose or mouth."[9]

79.     HFMD is commonly found on hands; the primary way to prevent HFMD is to wash hands often with soap and water.[10]

80.     According to Table 2 of Exhibit 3, HFMD is killed by 90% ethanol at an exposure time of 5 minutes.

81.     HFMD is not killed by the Products.

82.     The Centers for Disease Control and Prevention (CDC) estimates that there are 10-15 million symptomatic cases of HFMD each year in the United States.[11]

83.     ***Enteroviruses are commonly found on hands***.

84.     There are more than 100 types of non-polio enteroviruses, which include Human

---

[7] *Id.*

[8] https://www.cdc.gov/non-polio-enterovirus/outbreaks-surveillance.html (last accessed April 7, 2023).

[9] https://wwwnc.cdc.gov/travel/diseases/hand-foot-and-mouth-disease#:~:text=Hand%2C%20foot%2C%20and%20mouth%20disease%20spreads%20through%20close%20personal%20contact,your%20eyes%2C%20nose%20or%20mouth.

[10] *Id.*

[11] https://www.pediatricgroup.com/hand-foot-mouth-disease#:~:text=Hand%20Foot%20and%20Mouth%20Disease%20(HFMD)%20is%20a%20condition%20caused,year%20in%20the%20United%20States

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

enterovirus type 71.[12]

85.    "Enteroviruses spread easily from person to person, usually on unwashed hands and surfaces contaminated by poop, where they can live for several days. They also can spread through droplets when someone with an infection coughs or sneezes, or through fluid in skin blisters."[13]

86.    "[T]he best prevention measures include washing hands well and often, avoiding contact with sick people, and keeping household surfaces clean and disinfected."[14]

87.    According to Table 2 of Exhibit 3, human enterovirus type 71 is killed by 80% ethanol at an exposure time of 1 minute, or 90% ethanol at an exposure time of 30 seconds.[15]

88.    Human enterovirus type 71 is not killed by the Products.

89.    "Non-polio enteroviruses cause about 10 to 15 million infections and tens of thousands of hospitalizations each year in the United States."[16]

90.    ***Norovirus is commonly found on hands.***

91.    "The extremely contagious stomach virus is transmitted from person to person via direct contact. This can happen just by shaking hands with someone who's sick, eating contaminated foods, and touching infected surfaces."[17]

---

[12] https://www.cdc.gov/non-polio-enterovirus/about/eva71.html#:~:text=I%20protect%20myself%3F,What%20is%20enterovirus%20A71%3F,in%20infants%20and%20young%20children

[13] https://kidshealth.org/en/parents/enteroviruses.html#:~:text=Yes.,through%20fluid%20in%20skin%20blisters (last accessed April 8, 2023).

[14] *Id.*

[15] Human enterovirus type 70 is inapplicable because it is transmitted by eye secretions and causes acute hemorrhagic conjunctivitis, a serious eye disease.  *See* https://journals.asm.org/doi/10.1128/jvi.00604-22#:~:text=Enterovirus%2070%20(EV70)%20is%20a,EV70%2C%20its%20structure%20is%20unknown. (last accessed April 8, 2023).

[16] https://www.cdc.gov/non-polio-enterovirus/index.html (last accessed April 8, 2023).

[17] https://www.passporthealthusa.com/2018/03/an-easy-way-to-avoid-norovirus-wash-your-hands/#:~:text=Norovirus%20goes%20by%20many%20names,foods%2C%20and%20touching%20infected%20surfaces. (last accessed April 8, 2023).

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

92.    A study cited by the World Health Organization shows that fingers contaminated with norovirus could sequentially transfer the virus to up to seven clean surfaces.[18]

93.    Thorough hand washing is the primary way to kill norovirus and prevent the spread of norovirus.[19]

94.    **"Hand sanitizer does not work well against norovirus.** Handwashing is always best."[20]

95.    According to Table 2 of Exhibit 3, norovirus is killed by between 70%-90% ethanol at an exposure time of 30 seconds.

96.    Norovirus is not killed by the Products.

97.    In the United States, approximately 21 million illnesses attributable to norovirus are estimated to occur annually.[21]

98.    ***Rhinoviruses are commonly found on hands.***

99.    "Rhinoviruses are spread through respiratory droplets that are released when an infected person coughs or sneezes. These droplets can enter another person's body if they breathe them in, or if they touch a surface contaminated with the virus and then touch their eyes, nose, or mouth. Rhinoviruses can also be spread through close personal contact with an infected person, such as shaking hands or hugging."[22]

100.    The primary way to protect yourself from rhinoviruses is by washing hands with

---

[18] Available at https://www.who.int/publications/i/item/9789241597906 (last accessed April 8, 2023).

[19] https://www.cdc.gov/norovirus/about/prevention.html (last accessed April 8, 2023).

[20] *Id.* (emphasis in original).

[21] https://www.cdc.gov/mmwr/preview/mmwrhtml/rr6003a1.htm#:~:text=Noroviruses%20are%20the%20most%20common,are%20estimated%20to%20occur%20annually. (last accessed April 7, 2023).

[22] https://www.cdc.gov/ncird/rhinoviruses-common-cold.html#:~:text=Rhinoviruses%20can%20also%20be%20spread,as%20shaking%20hands%20or%20hugging. (last accessed April 8, 2023).

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

soap and water for at least 20 seconds.[23]

101.    According to Table 2 of Exhibit 3, rhinoviruses are killed by 80% ethanol at an exposure time of between 3 to 60 minutes.

102.    Rhinoviruses are not killed by the Products.

103.    Rhinoviruses are the most frequent cause of the common cold.  In the United States, children have an average of two rhinovirus infections each year, and adults have an average of one infection each year.[24]

104.    ***Rotavirus is commonly found on hands***.

105.     "Rotavirus is a very contagious virus that causes diarrhea."[25]

106.    According to Table 2 of Exhibit 3, rotavirus is killed by 85% ethanol at an exposure time of 30 seconds.

107.    Rotavirus is not killed by the Products.

108.    Rotavirus is the most common cause of severe gastroenteritis (diarrhea) in infants and young children in the United States. *Id.*

**2.      The Products do not kill certain protozoan and spores, which are commonly found on hands.**

109.    ***Cryptosporidium are commonly found on hands***.

110.    Cryptosporidium is a genus of protozoan pathogens, which include the giardia parasite and the parasite that causes toxoplasmosis.

111.    Hands can become contaminated with cryptosporidium through a variety of activities, such as touching surfaces or objects (e.g., toys, bathroom fixtures, changing tables, diaper pails, litter boxes) that have been contaminated by poop from an infected person or animal,

---

[23] *Id.*

[24] https://www.cdc.gov/ncird/rhinoviruses-common-cold.html#:~:text=In%20the%20 20United%20States%2C%20children,or%20other%20underlying%20medical%20conditions. (last accessed April 7, 2023).

[25] https://www.mayoclinic.org/diseases-conditions/rotavirus/symptoms-causes/syc-20351300

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

changing diapers, caring for an infected person, and touching an infected animal.[26]

112.    "The best way to prevent the spread of Cryptosporidium in the home is by practicing good hygiene. Wash your hands frequently with soap and water, especially after using the toilet, after changing diapers, or cleaning a litter box and before eating or preparing food. **Alcohol-based hand sanitizers are not effective against Crypto**."[27]

113.    Cryptosporidium are not killed by the Products.

114.    In the United States, an estimated 748,000 cases of cryptosporidiosis occur each year.[28]

115.    ***C. difficile is commonly found on hands***.

116.    C. difficile is a major spore forming bacteria.

117.    "If someone with C. diff (or caring for someone with C. diff) doesn't clean their hands with soap and water after using the bathroom, they can spread the germs to people and things they touch."[29]

118.    "C. diff can also live on people's skin. People who touch an infected person's skin can pick up the germs on their hands. Taking a shower with soap and water can reduce the C. diff on your skin and lessen the chance of it spreading."[30]

119.    "Washing with soap and water is the best way to prevent the spread from person to person."[31]

---

[26] https://www.cdc.gov/parasites/crypto/general-info.html. (last accessed April 8, 2023).

[27] *Id.* (emphasis in original).

[28] https://www.cdc.gov/parasites/crypto/infection-sources.html (last accessed April 8, 2023).

[29] https://www.cdc.gov/cdiff/prevent.html (last accessed April 8, 2023).

[30] *Id.*

[31] *Id.*

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

120.    Hand sanitizer does not kill C. diff.[32]

121.    C. diff is not killed by the Products.

122.    C. diff causes almost 500,000 infections in the United States each year.[33]

**E.  The Products Have a Non-Monograph Status**

123.    The active ingredient in the Products is ethyl alcohol.

124.    The amount of ethyl alcohol in the Products ranges between 63% to 70%.

125.    The U.S. Food and Drug Administration ("FDA") has deferred any rulemaking on whether the active ingredient in the Products, ethyl alcohol, is generally recognized as safe or generally recognized as effective for use in consumer antiseptic rubs because it determined that additional safety and effectiveness data is needed. *See* 21 CFR 310, FDA-2016-N-0124, at 14848 (April 12, 2019).

126.    Accordingly, the Products have a nonmonograph status, meaning there is no generally accepted FDA language for labeling and marketing the Products.[34]

127.    Despite their nonmonograph FDA status, the Products are misbranded under identical federal and Missouri laws.

128.    Identical federal and Missouri laws govern the labeling and misbranding of drugs. See § 196.100, RSMo ("Any manufacturer, packer, distributor or seller of drugs or devices in this state shall comply with the current federal labeling requirements contained in the Federal Food, Drug and Cosmetic Act, as amended, and any federal regulations promulgated thereunder. Any drug or device which contains labeling that is not in compliance with the provisions of this section shall be deemed misbranded.").

---

[32]https://www.cdc.gov/cdiff/clinicians/faq.html#:~:text=Gloves%20are%20important%20becaus e%20hand,eliminate%20all%20C.%20diff%20spores. (last accessed April 8, 2023).

[33] https://www.cdc.gov/cdiff/what-is.html#:~:text=It's%20estimated%20to%20cause% 20almost,infection%20die%20within%20one%20month. (last accessed April 8, 2023).

[34]  A monograph is described by the FDA as "a kind of 'recipe book' covering acceptable ingredients, doses, formulations, and labeling in over-the-counter drugs.

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

129.    A drug or device is misbranded "if its labeling is false or misleading in any particular." *See* 21 U.S.C. § 352.

130.    Misbranding reaches not only false claims, but also those claims that may be technically true, but are still misleading. If any label representation is misleading, the entire product is misbranded, and no other label statement can cure a misleading statement.

131.    Missouri law prohibits: "(1) The manufacture, sale, or delivery, holding or offering for sale of any food, drug, device, or cosmetic that is adulterated or misbranded; (2) The adulteration or misbranding of any food, drug, device, or cosmetic; (3) The receipt in commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise; (4) The sale, delivery for sale, holding for sale, or offering for sale of any article in violation of section 196.080 or 196.105; (5) The dissemination of any false advertisement . . . ." § 196.015, RSMo.

132.    Furthermore, Missouri law prohibits: "The using, on the labeling of any drug or in any advertising relating to such drug, of any representation or suggestion that an application with respect to such drug is effective under section 196.105, or that such drug complies with the provisions of such section . . . ." § 196.015(11), RSMo.

133.    As described herein, contrary to the label Representation, the Products do not "kill 99.99% of germs" and are therefore misbranded under the law.

134.    Accordingly, the Products cannot be lawfully sold, held or received and are legally worthless.

135.    To be clear, Plaintiff does not bring this action pursuant to any FDA regulation, but under the applicable consumer protection laws and common law, which require that Defendant truthfully and accurately label the Products.

136.    Specifically, Plaintiff brings this action based on Defendant's false and misleading Representations, which are advertising statements, and Defendant's omissions.

137.    Resolution of Plaintiff's claims requires factual determinations as to whether

16

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

Defendant's Representations are false and whether they are misleading to reasonable consumers.

## JURISDICTION AND VENUE

138.    This Court has original jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court. Plaintiff believes and alleges that the total value of his individual claims is at most equal to the refund of the purchase price he paid for the Products.

139.    This Court has personal jurisdiction over Defendant pursuant to § 506.500, RSMo., as Defendant resides in and has its principal place of business in Saint Louis, Missouri. At all times material hereto, Defendant was conducting business in Missouri.  Additionally, and as explained below, Defendant has committed affirmative tortious acts within the State of Missouri that give rise to civil liability, including manufacturing, labeling, and selling the misbranded Products in and throughout the State of Missouri.

140.    Plaintiff is a citizen of the State of Missouri.

141.    Venue is proper in this forum pursuant to §§ 508.010 and 407.025.1, RSMo., because the transactions complained of occurred in Phelps County, Missouri and Plaintiff was injured in Phelps County, Missouri.

## PARTIES

142.    Plaintiff James Eyberg is a resident of Phelps County, Missouri who purchased the Products during the class period for personal, family or household purposes, as described herein. Plaintiff's claim is typical of all Class members in this regard.

143.    The advertising and labeling on the package of the Products purchased by Plaintiff, including the Representations, is typical of the advertising, labeling and representation of the Products purchased by members of the Class.

144.    The price paid by Plaintiff for the Products is typical of the price by members of the Class.

145.    Plaintiff relied on Defendant's Front Panel Representation, as described below.

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

146.    Plaintiff's reliance on Defendant's Front Panel Representation is typical of the reliance of the members of the Class.

147.    Defendant Von-Jon, LLC is a Delaware Limited Liability Company with its principal place of business in Saint Louis, Missouri.

148.    Defendant and its agents manufacture, market, distribute, label, promote, advertise, and sell the Products.

149.    The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations and omissions alleged herein.

**A.  Plaintiff Reasonably Relied On Defendant's Representations**

150.    Plaintiff purchased one or more Germ-X Products during the class period from a Walmart store located in this judicial district.

151.    Plaintiff purchased the Products for the particular purpose of sanitizing hands and killing germs on hands and used and relied on the Products for this purpose.

152.    Each of the purchased Products bear the Representations.

153.    At the time of purchase of the Products, Plaintiff viewed the Front Panel Representation.

154.    Acting reasonably under the circumstances, Plaintiff relied on the Front Panel Representation.

155.    Plaintiff reasonably relied on the Front Panel Representation for the truth of the statement that the Products kill 99.99% of germs.

156.    The Front Panel Representation is false and misleading.

157.    As described herein, the Products do not kill 99.99% of germs on hands.

158.    Plaintiff was misled by Defendant's Front Panel Representation.

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

159.    Similarly situated consumers acting reasonably under the circumstances similarly relied on Defendant's Front Panel Representation.

160.    Similarly situated consumers acting reasonably under the circumstances were misled by Defendant's Front Panel Representation.

161.    Had Plaintiff known at the time of purchase that the Front Panel Representation was false; Plaintiff would not have purchased the Products or would have paid less for them.

162.    Plaintiff suffered an injury in fact by purchasing the Products.

163.    Plaintiff suffered an economic injury based on the loss of the benefit of the bargain between what was represented by Defendant—Products that kill 99.99% of germs—and what was received—Products that do not kill 99.99% of germs.

164.    In addition, at the time of purchase, Plaintiff and reasonable consumers did not know, and had no reason to know, that Defendant's Products were misbranded under the law and not capable of being legally sold, delivered, held, or received in commerce ("Legally Saleable").

165.    Plaintiff and reasonable consumers attach importance to whether goods such as the Products at issue are Legally Saleable.

166.    Plaintiff and reasonable consumers would not have purchased the Products had they known they were not Legally Saleable.

## CLASS DEFINITIOIN AND CLASS ALLEGATIONS

167.    Pursuant to Missouri Rule of Civil Procedure 52.08 and § 407.025.2 of the Missouri Merchandising Practices Act, Plaintiff seeks to represent the following Class:

> All Missouri purchasers who, February 5, 2016 through January 21, 2020, purchased Defendant's alcohol-based hand sanitizer Products for personal, family, or household purposes that bear a "kills 99.99% of germs" or "kills more than 99.99% of germs" representation on the front label.

168.    Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state,

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

169.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

170.    This action is properly maintainable as a class action pursuant to Missouri Supreme Court Rule 52.08 for the reasons set forth below.

171.    Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of tens of thousands of purchasers throughout the State of Missouri.  Accordingly, it would be impracticable to join all members of the Class before the Court.

172.    There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether the Product Representations and omissions are, or any single representation or omission is, false, misleading and/or deceptive;
- Whether Defendant violated the Missouri Merchandising Practices Act;
- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct; and
- The proper measure of damages sustained by Plaintiff and the Class.

173.    Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products.

Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

174.    Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

175.    A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.    The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.    Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

e.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

176.    Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

177.    Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute, which is the center of this litigation. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members of the Class who are not parties to the adjudication and may impair or impede their ability to protect their interests. Consequently, class treatment is a superior method for adjudication of the issues in this case.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of Missouri's Merchandising Practices Act**
**Misrepresentations and False Statements**
*(for Plaintiff and the Class)*

178.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

179.    The MMPA "is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair practices." *Huch v. Charter Commc'ns Inc*., 290 S.W. 3d 721, 725 (Mo. banc 2009). The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." § 407.020.1, RSMo.

180.    The MMPA applies to acts committed "before, during or after the sale, advertisement or solicitation" of merchandise, and provides a cause of action for "any person who purchases or leases merchandise primarily for personal, family or household purposes." Section 407.020 is intended to supplement the definitions of common law fraud to "preserve fundamental honesty, fair play and right dealings in public transactions."

181.    Defendant's conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that Defendant makes materially false representations and omissions, as described herein.

182.    In violation of the MMPA, Defendant employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression, or omission of material facts in its manufacture, sale, and advertisement of the Products, including concerning the limitations of the Products to "kill" certain "germs".

183.    Plaintiff purchased the Products for personal, family, or household purposes.

184.    Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

185.    Plaintiff is also entitled to recover attorney fees as authorized by § 407.025.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Violation of Missouri's Merchandising Practices Act**
**Unfair Practice, 15 CSR 60-8.020**
**(*for Plaintiff and the Class*)**

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

186.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

187.    The MMPA prohibits as an unlawful practice the act, use or employment of any "unfair practice" in connection with the sale or advertisement of any merchandise in trade or commerce. § 407.020.1, RSMo.

188.    "Unfair practice" is defined as "any practice which –

(A) Either

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

15 CSR 60-8.020.

189.    Defendant's actions, as alleged herein, constitute an unfair practice.

190.    Plaintiff purchased the Products for personal, family, or household purposes.

191.    Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.

192.    In addition, Defendant's misrepresentations and omissions constitute an unfair practice because the Product labels are "false or misleading in any particular" and the Products are therefore misbranded under the law.  In addition, the Products are legally worthless.

193.    Plaintiff is also entitled to recover attorney fees as authorized by § 407.025.

### THIRD CLAIM FOR RELIEF
### Violation of Missouri's Merchandising Practices Act
### Concealment or Omission of any Material Fact, 15 CSR 60-9.110
### (*for Plaintiff and the Class*)

194.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

195.    The MMPA prohibits as an unlawful practice the act, use or employment of the "concealment, suppression or omission of any material fact" in connection with the sale or advertisement of any merchandise in trade or commerce. §407.020.1, RSMo.

196.    A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner." 15 CSR 60- 9.010(1)(C).

197.    "Concealment of a material fact" is defined as "any method, act, use or practice which operates to hide or keep material facts from consumers." 15 CSR 60-9.110(1).

198.    "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." 15 CSR 60-9.110(3).

199.    Defendant's actions as alleged herein constitute the concealment and omission of material facts.  Among other things, Defendant concealed and omitted the material facts that the Products do not kill 99.99% of germs and are not Legally Saleable.

200.    Plaintiff purchased the Products for personal, family, or household purposes.

201.    Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

202.    Plaintiff is also entitled to recover attorney fees as authorized by § 407.025.

**PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.     For an order certifying the Class; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.     For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Class on all counts asserted herein;

D.     For an order awarding attorneys' fees and costs;

E.     For an order awarding punitive damages;

F.     For an order awarding pre-and post-judgment interest; and

G.     For such other and further relief as the Court deems just and proper.

Dated this 23rd day of June, 2023.

JAMES EYBERG, Individually, and on behalf of all others similarly situated,

/s/ Bryce C. Crowley

By:    _____
David L. Steelman, #27334MO
Stephen F. Gaunt, #33183MO
Bryce C. Crowley, #64800MO
**STEELMAN GAUNT CROWLEY**
901 N. Pine Street, Suite 110
P.O. Box 1257
Rolla, MO 65402
Tel: (573) 341-8336
Fax: (573) 341-8548
dsteelman@sgclawfirm.com
sgaunt@ sgclawfirm.com
bryce@sgclawfirm.com

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

Electronically Filed - Phelps - June 23, 2023 - 02:33 PM

Scott A. Kamber, #70534MO
**KAMBERLAW LLC**
201 Milwaukee Street, Suite 200
Denver, CO 80206
Tel:    (303) 222-9008
Fax:    (212) 202-6364
skamber@kamberlaw.com

*Attorneys for Plaintiff and the Putative Class*